**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 28, 2020[*]
Decided May 29, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1859

| | |
|---|---|
| SHAFIA JONES, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-CV-1253 |
| JON NOBLE and SARAH COOPER, *Defendants-Appellees*. | David E. Jones, *Magistrate Judge*. |

**O R D E R**

Shafia Jones, an African-American inmate at a Wisconsin state prison, maintains that two prison officials violated her equal protection rights when they delayed her release from a restrictive housing unit after she was found not guilty of a disciplinary charge. The district court entered summary judgment for the defendants, concluding that there was no evidence that Jones had been treated differently from any similarly situated inmate or that the defendants had acted with discriminatory intent. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

In mid-2017, Jones received a conduct report alleging that she had possessed contraband, disobeyed orders from an officer, and engaged in disruptive conduct while resisting a pat-down search. She was placed in "temporary lock up," a nonpunitive status that separates inmates from the prison's general population pending an administrative action. *See* WIS. ADMIN. CODE DOC § 303.02(40) (2017). Under the state's administrative regulations, inmates can be held in temporary lock up for up to 21 days if prison staff believes that the inmate's presence in the general population would "impede a pending investigation or disciplinary action" or "be disruptive to the operation of the prison." *Id*. § 303.10. While a prisoner is in temporary lock up, the prison's security director conducts a review every seven days to ensure that the placement continues to be appropriate. *Id.*

At Jones's disciplinary hearing the following week, a hearing officer found her "not guilty" based on a procedural error—she had not received a copy of the conduct report within two days of its processing by the prison's security director.

For eight more days the security director, Jon Noble, kept Jones in temporary lock up while he tried to process another conduct report against her over the same incident. He twice extended her detention, explaining that he needed to determine whether due process considerations prevented the prison from holding another hearing to reach the merits of the charges. During this time, Jones wrote to Warden Sarah Cooper that Noble was improperly detaining her because of her race (she asserted that a white inmate, Jodie Ott, had been timely released after a not-guilty finding) and that she had been issued another conduct report for the same incident, in violation of the state's administrative regulations.

Jones spent two weeks in temporary lock up before being transferred to a mental-health institute for a court-ordered competency evaluation.

When she soon returned to the prison, she was placed in general population at the prison's maximum-security housing unit.

Jones sued Noble and Warden Cooper for violating her equal protection rights when they delayed her release from temporary lock up because of her race. *See* 42 U.S.C. § 1983. She pointed to the different treatment afforded the white inmate, Ott, whom Noble had released from temporary lock up immediately after she prevailed at her disciplinary hearing.

A magistrate judge, proceeding with the parties' consent, *see* 28 U.S.C. § 636(c), granted the defendants' motion for summary judgment. The judge concluded that Jones had failed to identify a better treated, similarly situated individual: Ott was not an appropriate comparator, the judge explained, because she was a medium-security inmate (Jones was maximum-security) and she was deemed not guilty after a hearing revealed that she had been the *victim* of the misconduct alleged on her conduct report (Jones, on the other hand, was found not guilty as the result of procedural error rather than any merits determination). Further, Jones failed to put forth evidence that Noble extended her placement in temporary lock up because of racial animus. As for the warden, the court ruled that no reasonable juror could find that she knew about or was personally involved in Jones's lock-up status.

On appeal, Jones challenges the district court's conclusion that Ott was not an appropriate comparator. She maintains that she and Ott both were found not guilty after a disciplinary hearing, and that the district court had seized upon immaterial distinctions when concluding that they were not similarly situated.

The district court correctly found Jones and Ott not similarly situated. Two individuals are similarly situated, and thus require equal treatment under the Fourteenth Amendment, if they are "directly comparable in all material respects." *See Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 549 (7th Cir. 2017). As the court explained, Ott was a medium-security inmate who was found not guilty after a ruling on the merits, whereas Jones was a maximum-security inmate who was found not guilty because of a procedural error. These differences are not immaterial: The relevant regulations permit the security director to consider each inmate's potential disruption to the general population when assessing an inmate's suitability for release from temporary lock up. *See* WIS. ADMIN. CODE DOC § 303.10 (2017).

Further, Jones presented no evidence that Noble acted with discriminatory intent when he delayed her release from temporary lock up—a showing she had to make in order to avoid summary judgment on her claim. *See Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). The record supports the district court's conclusion that Noble continued to detain Jones because he believed, albeit mistakenly, that he could hold a second hearing on the allegations against her. Her speculation otherwise is not enough to survive summary judgment. *See id.* at 720.

To the extent Jones also challenges the entry of summary judgment for Warden Cooper, we agree with the district court that no reasonable jury could find that Cooper

participated in the decision to hold Jones on temporary lock-up status. A defendant is liable for damages under § 1983 only if she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Even if it were assumed that the warden received the letter Jones wrote to her, Cooper could not be held liable because Jones failed to prove any underlying constitutional violation. *Id.*

We have considered Jones's other arguments, and none has merit.

AFFIRMED